IN THE MATTER OF THE PETITION (UNDER CHAPTER 338 OF THE LAWS OF 1858) OF SAMUEL PHILLIPS TO VACATE AN ASSESSMENT FOR FLAGGING TWENTY-NINTH STREET BETWEEN TENTH AND ELEVENTH AVENUES, *v*. THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, APPELLANTS.†

*Chapter* 338 *of* 1858 — *Assessment* — *presumption as to* — *Who may maintain action to remove cloud on title* — *Warrantor of title* — *Designation of official paper* — *acceptance must be shown.*

The acts of making and confirming local assessments are taken for the public benefit by public officers, and are to be presumed to have been rightly performed.

A grantor of land who has no longer any interest therein, cannot take proceedings to remove a cloud on the title. Nor does the fact that he has warranted the title justify him in bringing the suit.

The mere fact that a newspaper is designated to publish the official proceedings, without proof of its acceptance of the appointment, is not sufficient to show that it is an advertising organ of the city. The designation was not necessarily an employment of the paper.

APPEAL from an order of Special Term, vacating an assessment.

On December 3, 1873, Samuel Phillips filed in the Supreme Court the following petition :

---

\* Hall v. Suydam, 6 Barb., 83.          † See In re Burke, *post*.

" The petition of Samuel Phillips respectfully shows to this court:

" That at the times hereinafter mentioned, your petitioners were, and still are, the owners, respectively, of the lots hereinafter described.

" That on the 27th day of January, 1869, an assessment list was confirmed, whereby an assessment for flagging Twenty-ninth street, between Tenth and Eleventh avenues, in the city of New York, was imposed upon certain lots known and distinguished on said assessment list by the ward number 2,348, map No. 3.

" That said assessment is irregular and void for the following reasons :

"*First.* That previously to the laying of the aforesaid pavement or flagging, the said street had been paved or flagged, and an assessment therefor levied upon said lots and paid, and this new assessment is without authority of law.

" *Second.* That the resolution and report of the committees of the common council, recommending said work, were not published two days in all the newspapers employed by the corporation before said resolution was passed and adopted by the respective boards of the common council, nor was any or either of them, nor any notice thereof, ever published as required by section 7, of the amended charter of 1857.

" *Third.* That there was no authority of law for laying any assessment for said work.

" Therefore, your petitioners pray that said assessment, so far as it affects the said lots of your petitioners, be adjudged irregular and void, and be vacated and set aside, and the lien therefor cease and be canceled."

Proof was offered to show that the assessment was imposed on the lots in question.

The counsel for petitioner read in evidence, from the printed proceedings of the board of aldermen, the following letter appointing corporation newspapers in the city of New York :

"MAYOR'S OFFICE,
"NEW YORK, *July* 2, 1863.

" In pursuance of the second section of the act entitled 'An act to enable the supervisors of the county of New York to raise

money by tax for the use of the corporation of the city of New York,' passed April 24, 1863 (chapter 227, Laws of 1863), we, George Opdyke, mayor, and Matthew T. Brennan, comptroller, hereby designate the New York Dispatch and New York Leader as two additional papers in which to publish advertisements mentioned in said act.

" (Signed)      GEORGE OPDYKE,
                               " *Mayor.*

" (Signed)      MATTHEW T. BRENNAN,
                               " *Comptroller.*

" Which was referred to committee on printing and advertising." (Proceeding of the board of aldermen, volume XCI, page 338.)

The counsel for petitioner produced in evidence the proceedings of the common council, whereby it appeared that the resolution authorizing this work, was introduced into the board of aldermen, March 11, 1867; the report of committee, made March 14, 1867, and adopted June 12, 1867. It was introduced into the board of councilmen and referred, April 1, 1867, and adopted June 24, 1867.

It appeared, by affidavit, that no publication of the resolution authorizing this work, appeared on the files of the New York Leader from March 11, 1867 to June 24, 1867.

The petitioner also showed that the said lots were assessed for such flagging in an assessment list confirmed in 1850, and that the amount was paid; and he testified that on January 27, 1869, the date of confirmation of the assessment, he was the owner of the lots mentioned in the petition.

*William Barnes* and *E. Delafield Smith,* for the appellants. The petitioner did not show that he was owner of the lots when this proceeding was commenced, and he cannot maintain it. (*Townsend* v. *Goelet,* 11 Abb. Pr., 187 ; *Bissell* v. *Kellogg,* 60 Barb., 617–629.) Section 7, chapter 456, of 1857, did not require the publication in the New York Leader. Any irregularity was cured by section 7 of act of 1872, as amended by chapter 332 of 1874.

*Neville & Andrews,* for the petitioner. The assessment was void for failure to publish. (*Matter of Douglass,* 46 N. Y., 42.) Section

175 of chapter 86, of 1813, gave power to assess for paving *the streets*. The sidewalks are part of the streets. ( *Wallace* v. *The Mayor*, 2 Hilt., 440 ; Corporation Ordinances, 1866, p. 232 ; *Davenport* v. *Ruckman*, 16 Abb. 341; Angell on Highways, p. 304.)

Davis, P. J. :

The assessment which the petitioner seeks to vacate, was confirmed on the 27th day of January, 1869 ; and is upon certain lots " known and distinguished on the assessment list by ward number 2348, map No. 3." The petition was verified on the 4th day of February, 1874, showing that more than five years had elapsed, between the confirmation, and the filing of the petition to set aside the assessment. Assessments of this character are not to be presumed invalid. They are made for the purpose of charging improvements of the public streets upon the property actually benefited thereby, and the burden ought not to be shifted from such property to the shoulders of the tax-payers of the city, for light or trivial reasons. The acts of making and confirming such assessments, are taken for the public benefit, by public officials, and are, therefore, upon principles which have become maxims of the law, to be presumed to have been rightly and properly performed till the contrary is plainly shown. The petitioner after so long a lapse of time, attacks the assessment by this summary proceeding, substantially on the ground that it is a cloud upon the title of the lots affected which he has the right to have removed by an adjudication of the court. The assessment is not a personal tax upon him. It is a lien upon the lands upon which it is charged, and the first duty of the petitioner is to show that he has such an interest in the lands as owner, as entitles him to institute a proceeding to free the title from the alleged cloud. This he has failed to do.

In *Townsend* v. *Goelet* \* it was held that a grantor of land, who has no longer any interest, cannot maintain an action to remove an apparent lien thereon as being a cloud on the title, on the ground that he agreed with the grantee, that he would procure the lien to be discharged. And in *Bissell* v. *Kellogg* † this court, sitting for the fourth department, held that an action to remove a cloud upon the title to land in which the plaintiff has no interest, does not lie

---

\* 11 Abb. Pr. Rep., 187.                    † 60 Barb., 617.

on the sole ground that he has warranted the title; and TALCOTT, J., in delivering the opinion of the court, says: "We have been referred to no authority, and have discovered none, giving countenance to the idea that a party can maintain a suit to remove a cloud upon the title to land in which he has no interest, and upon the sole ground that he has warranted the title; and we do not think that such an action can be maintained." We think there can be little doubt, that, to maintain his proceeding, the petitioner in such case must show an actual interest in the land at the time of filing his petition. Otherwise, he is not the party aggrieved. He must show himself either to be the owner at the time, or to bear such a relation to the land that he is directly aggrieved by the continuance of the lien, and it is not enough to show that the present owner, in some future contingency, will or may have recourse to him for indemnity upon the covenants of a grant or other contract. The petitioner in this case does not show, even argumentatively, that he has any present interest in the lots. He testifies, "that at the time of the confirmation of the above named assessment, on the 27th day of January, 1869, he was the owner of, and still is held liable for the payment of the assessments imposed on lots mentioned and described in said petition by ward number 2348." This clearly is no assertion of any present interest in the land. On the contrary, the fair inference from his testimony is that he is not the present owner; and his statement may be entirely true, and yet the land have passed through any number of subsequent grantees, to the person who is now its owner. It is true he states that. he is still held liable for the payment of the assessment, but how, and to whom, and under what circumstances, he does not disclose. The statement is at most a mere legal conclusion of his own mind from undisclosed facts and circumstances, and by no means affords to the court any basis for the finding that his relation is such that he is the proper party to institute this proceeding. Possibly the really interested parties have no complaint to make, but are quite willing to bear a share of the expense of an improvement, beneficial to their land, notwithstanding some error which would in strictness enable them to cast it wholly upon their fellow taxpayers. We think this defect in the proof is fatal, and calls for a reversal of the order.

But the proof was entirely insufficient, for other reasons, to justify the vacation of the assessment. The principal point alleged, is that the proceedings of the common council, in relation to such assessment, were not published in "The New York Leader." Proof was given that they were not found on full search of the files of that paper, between the 11th day of March, 1867, and the 24th day of June, 1867; and a certificate was produced, signed by the mayor and comptroller July 2, 1863, designating the New York Leader and another paper, as two "additional papers, in which to publish the advertisements, mentioned in said act." (The act of April 24, 1863.) The proof stopped here; but something more was requisite. It was not sufficient to show that a paper had been designated in 1863, because a designation was not an employment of the paper. No obligation was thereby imposed on the paper, and, unless it appeared that the paper accepted the appointment and performed the duty, required by it as one of the advertising papers, nothing would follow from the mere designation. To illustrate: The New York Herald was one of the daily papers designated by those officers; but it is said that the Herald refused to publish the proceedings and notices on the terms offered. Of course the most diligent search would fail to find any of the ordinances or proceedings in relation to assessments, in the columns of that paper, and hence, if mere proof of designation, followed by proof that the publications were not to be found in one of the papers designated, was sufficient to overthrow an assessment, then every assessment, for several years, would be defeated for lack of publication in the Herald. In addition to designation, it was essential to prove that the paper in fact became an advertising organ of the city, employed, and, by acceptance of the terms of the designation, accustomed and bound to insert the advertisements. The mere absence of the publication in the Leader in 1867, was therefore quite insufficient to overthrow the presumption that the publications were properly made in the papers really in the employ of the city at that time.

Besides, by the act of 1866,* $30,000 were appropriated for advertising for the common council; and it was provided, that "no portion of the sums which shall hereafter be raised by tax and assessment, or from any other source, in the city and county of

* Sess. Laws of 1866, chap. 876, vol. 2, p. 2056.

New York, shall be paid for advertising, except the same shall have been incurred for advertisements in the newspapers, authorized by the mayor, comptroller *and corporation counsel* of said city, or any two of them."

Here, a new board of appointment was created, which may be presumed to have done its duty, and *non constat* that the Leader was one of the papers authorized by that board.

Again, by the act of April 23, 1867,* the comptroller alone is directed " to select three daily, and three weekly newspapers published in the city of New York, as papers wherein the proceedings of the common council or either branch thereof shall be published. * * * And no proceedings of the common council or of either branch thereof, or notices of its committees, shall be officially published in any other paper or papers." We are not to presume that the comptroller did not perform this duty ; and, in the absence of proof, it cannot be presumed that the designation of the Leader, in 1863, continued operative in 1867, notwithstanding the intervening acts and directions of the legislature. It is not necessary to discuss the other questions that arise ; nor to show that the curative act of 1872, made valid the assessment in question, † because, upon the grounds already stated, the order of the Special Term vacating the assessment, must be reversed with costs, and the petition and proceedings dismissed with costs.

DANIELS and BRADY, JJ., concurred.

Order reversed, and petition and proceedings dismissed.

* Chap. 585 Laws of 1867, page 1597, vol. 2.     † See Lennon case, 55 N. Y., 361.